**105**

**UNITED STATES of America.
Plaintiff–Appellee,**

v.

**Randy Carl PRICE, Defendant–
Appellant.**

No. 02–5313.

United States Court of Appeals,
Sixth Circuit.

Jan. 28, 2003.

Before NELSON and CLAY, Circuit
Judges; and HAYNES, District Judge.*

*ORDER*

Randy Carl Price appeals his conviction
for possessing a firearm as a convicted
felon in violation of 18 U.S.C. § 922(g)(1).
The parties have waived oral argument,
and, upon examination, this panel unani-
mously agrees that oral argument is not
needed. Fed. R.App. P. 34(a).

Price was indicted on the above firearm
charge as well as on two counts of posses-
sion of methamphetamine with the intent
to distribute. The two drug charges were
dismissed by motion of the government
before trial, after Price successfully moved
to suppress drug-related evidence as out-
side the scope of the search warrant. At
trial, the district court overruled Price's
objection to the admission of evidence con-
cerning a 911 call and also denied Price's
motions for acquittal. The jury convicted
Price of the firearms charge, and he there-
after was sentenced to 41 months in prison
and three years of supervised release.

On appeal, Price argues the district
court erred by admitting hearsay evidence
concerning the 911 call because the caller,
Price's eight year old daughter Rebecca,
lacked firsthand knowledge and her call
was not contemporaneous. Price also con-
tends that the district court erred by deny-
ing his motion for acquittal, that insuffi-
cient evidence existed to prove knowing
possession of the firearm, and that the

---

* The Honorable William J. Haynes, Jr., United
States District Judge for the Middle District of
Tennessee, sitting by designation.

verdict was against the weight of the evidence.

Review of the record establishes that the events in question began on August 16, 2000, when Deputy Sheriff Roger Walters received a 911 dispatch to respond to a domestic disturbance in progress. While Walters was en route, 911 again came over the radio and stated that there was a weapon involved. Rebecca had said to the 911 operator. Tammy Church, "My dad has a gun and is trying to shoot my mom." Rebecca further informed Church that her dad was trying to hit her mom, Melissa Minor, and had broken a window and torn out the phone. Although Rebecca was calling from a neighbor's residence across the driveway, shouting could be heard in the background. Rebecca concluded the call by saying, "My mom said forget it."

Upon arriving at Minor's trailer. Walters saw Price and Minor coming from behind the trailer. Walters separated the two to interview them individually. He testified at trial that Price had said that the weapon was under the bed in the bedroom and that it was Minor's weapon. Walters further testified that Minor explained she had been fighting with Price because he did not want her to take the kids shopping for clothes and that Minor gave Walters consent to enter the trailer to retrieve the weapon. Walters proceeded to the bedroom, he testified, where he noticed several piles of men's clothing on the floor and found the weapon, a Taurus PT 58 .380 handgun. Special agents of the Bureau of Alcohol. Tobacco, and Firearms performed a firearms trace and testified at trial that the handgun was made in Brazil, was in working condition, and had been purchased by Price in 1988.

Minor's testimony at trial varied somewhat from Walters's report of the interview. Minor testified that she had three children by Price, but lived with another man, Eddie Raben. Minor claimed ownership of the handgun, stating that Price had given it to her in 1993 before he was convicted of a felony. She also testified that Price had never been in her trailer and that she had not told him where the gun was. She denied that there had been an argument that day and denied knowing whether Rebecca had made a 911 call.

Upon consideration of the record, we conclude that the district court did not abuse its discretion by admitting the evidence concerning the 911 call. See *General Elec. Co. v. Joiner*, 522 U.S. 136, 141, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997) (stating that "all evidentiary decisions are reviewed under an abuse-of-discretion standard"); *United States v. Mick*, 263 F.3d 553, 566 (6th Cir.2001)(same). Rebecca's statements were properly admitted under the hearsay exceptions for a present sense impression and for an excited utterance. See Fed.R.Evid. 803(1) and (2); *United States v. Allen*, 235 F.3d 482, 493 (10th Cir.2000); *United States v. Hawkins*, 59 F.3d 723, 730 (8th Cir.1995); *Bemis v. Edwards*, 45 F.3d 1369, 1372 (9th Cir. 1995). The exception for present sense impression permits the introduction into evidence of a "statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." Fed.R.Evid. 803(1). A statement relating to a startling event may be admitted as an excited utterance where: 1) the event was startling enough to cause nervous excitement; 2) the declarant made the statement following the event, but before there was time to contrive or misrepresent; and 3) the declarant was still under the stress of the excitement when making the statement. *Haggins v. Warden, Ft. Pillow St. Farm*, 715 F.2d 1050, 1057 (6th Cir.1983); see also Fed.R.Evid. 803(2).

Price's challenges to the evidence concerning the 911 call lack merit. For either exception, the declarant's firsthand knowledge may be inferred from the circumstances. See Fed.R.Evid. 803 and Advisory Comm. Notes: *Bemis,* 45 F.3d at 1373. In the instant case, Rebecca's firsthand knowledge may be inferred from the 911 tape. After establishing that Rebecca was at a neighbor's residence. Church asked Rebecca what her parents were doing when she left. Rebecca again said that her father was pointing a gun at her mother. Furthermore, the 911 transcript implies that her parents' argument occurred not only in Minor's trailer, but also in the yard between the trailers. The transcript notes that shouting could be heard in the background, and Walters testified that Minor and Price were in the yard when he arrived. Thus, it is reasonable to conclude that Rebecca perceived the actual fight.

Rebecca's call was sufficiently contemporaneous under both exceptions. A 911 call made within minutes of the event is sufficiently contemporaneous to qualify under either exception. *United States v. Baggett,* 251 F.3d 1087, 1090 n. 1 (6th Cir. 2001), *cert. denied,* 534 U.S. 1167, 122 S.Ct. 1184, 152 L.Ed.2d 126 (2002); *Hawkins,* 59 F.3d at 730. That Rebecca made the statement within minutes after Price pointed a gun at Minor is shown by the shouting in the background as well as by the fact that Walters was already on his way to Minor's trailer when Rebecca called 911. We note that Price does not argue that witnessing one parent point a gun at the other is not a startling event or that Rebecca was not in a state of nervous excitement.

Price's second issue, which challenges the denial of the motions for acquittal, and his third issue, which challenges the sufficiency of the evidence as to whether he knowingly possessed a firearm, are dupli-cative. A motion for judgment of acquittal challenges the sufficiency of the evidence to support a conviction. See Fed. R.Crim.P. 29; *United States v. King,* 169 F.3d 1035, 1038 (6th Cir.1999). Thus, an appeal from the denial of a motion for a judgment of acquittal automatically requires the court to consider whether sufficient evidence existed to support the conviction.

The denial of a motion for a judgment of acquittal is reviewed de novo. *United States v. Keeton,* 101 F.3d 48, 52 (6th Cir.1996) When considering whether a conviction is supported by sufficient evidence, this court reviews the evidence and all reasonable inferences in a light most favorable to the government. *United States v. Bashaw,* 982 F.2d 168, 171 (6th Cir.1992). The evidence is sufficient to support a conviction if any rational trier of fact would accept the evidence as establishing each essential element of the crime. *Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Circumstantial evidence may be sufficient to support a conviction. *United States v. Seaton,* 45 F.3d 108, 110 (6th Cir.1995). This court refrains from independently judging the weight of the evidence and assessing the credibility of witnesses. *United States v. Wells,* 211 F.3d 988, 1000 (6th Cir.2000); *United States v. Jackson,* 55 F.3d 1219, 1225 (6th Cir.1995).

Evidence is sufficient to sustain a conviction for being a felon in possession of a firearm or ammunition where: 1) the defendant previously had been convicted of a crime punishable by imprisonment for a term exceeding one year; 2) the defendant knowingly possessed the firearm or ammunition; and 3) such possession was in or affecting interstate or foreign commerce. See 18 U.S.C. § 922(g); *United States v.*

108

*Moreno,* 933 F.2d 362, 372 n. 1 (6th Cir. 1991).

We conclude that sufficient evidence existed to establish Price's knowing possession of the gun. As noted above, Walters testified that Price told him where to find the gun and an ATF agent testified that the gun had been sold to Price by an Illinois retailer. This evidence, whether considered alone or in conjunction with Rebecca's 911 call, established that Price knowingly possessed the gun. Although Minor testified that Price did not know where the gun was and that he had given it to her many years before, the jury was free to find Walters's testimony more credible and to disregard Minor's testimony. We note that Price had stipulated to his prior conviction at trial and that he does not contest that the firearm traveled in interstate commerce.

We decline to consider whether the verdict is against the weight of the evidence, Price having failed to preserve the issue by filing a motion for a new trial in the district court. See Fed.R.Crim.P. 33; *United States v. Hernandez,* 227 F.3d 686, 695 (6th Cir.2000).

Accordingly, the district court's judgment is affirmed.