RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0031p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
─────────────────

SHAREE MILLER,

        *Petitioner-Appellant*,

    *v.*

CLARICE STOVALL, Warden,

        *Respondent-Appellee*.

No. 12-2171

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:05-cv-73447—Victoria A. Roberts, District Judge.

Argued: October 9, 2013

Decided and Filed: February 11, 2014

Before: BOGGS, MOORE, and KETHLEDGE, Circuit Judges.

─────────────────

### COUNSEL

**ARGUED:** Kimberly Thomas, UNIVERSITY OF MICHIGAN, Ann Arbor, Michigan, for Appellant. John S. Pallas, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee. **ON BRIEF:** Kimberly Thomas, UNIVERSITY OF MICHIGAN, Ann Arbor, Michigan, for Appellant. Mark G. Sands, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee.

BOGGS, J., delivered the opinion of the court, in which KETHLEDGE, J., joined, and MOORE, J., joined in the result. MOORE, J. (pg. 14), delivered a separate opinion concurring in the judgment.

─────────────────

### OPINION

─────────────────

BOGGS, Circuit Judge. Sharee Miller ("Miller") was convicted in Michigan state court of second-degree murder and conspiracy to commit first-degree murder and was sentenced to life without parole. The prosecution alleged, and the jury found, that

1

Miller had plotted with her lover, Jerry Cassaday, to murder her husband, Bruce Miller. The evidence of Miller's guilt included extensive email and instant-message ("IM") conversations between Cassaday and Miller, in which Miller lied to Cassaday that she was pregnant with his children but that her husband abused her and caused her to miscarry; convinced Cassaday that her husband was a dangerous man involved in organized crime and that her life was in danger; and plotted with Cassaday the precise details of her husband's murder. Shortly before the murder, Cassaday, who lived some distance away from Miller, told his brother Mike that he was leaving town for a couple of days and that, if he did not return, Mike should look for a briefcase under Cassaday's bed. Bruce Miller was murdered on November 9, 1999. By December, Miller had broken off her relationship with Cassaday and started dating someone else.

On February 11, 2000, Cassaday committed suicide. While cleaning Cassaday's home following his death, Mike found a briefcase and four notes. Three of the notes were addressed to family members: his youngest son, his ex-wife, and his parents. The fourth was taped to the briefcase and directed Mike not to open the briefcase alone, but rather, to open it in the presence of an attorney, which Mike did. Inside were copies of the emails and IM conversations implicating Miller in the murder. Mike sent the other three notes along to their respective addressees.

The contents of the briefcase were admitted into evidence at trial along with evidence linking the electronic communications to Miller's and Cassaday's individual America On-Line ("AOL") accounts. Cassaday's suicide note to his parents was also admitted at trial. Only the admission of the suicide note is disputed in this appeal. Miller claims that the admission of the note violated her clearly established right under the Sixth Amendment to confront her accuser. Miller therefore appeals the district court's denial of her petition for a writ of habeas corpus. We hold that the Michigan Court of Appeals did not err in upholding the note's admission at trial and affirm the order of the district court.

**I**

This case is before us for the second time.  The Michigan trial and appellate courts originally analyzed the admissibility of Cassaday's suicide note under *Ohio v. Roberts*, 448 U.S. 56, 66-68 (1980), which held that hearsay statements were admissible provided they bore sufficient "indicia of reliability."  Before Miller's conviction became final under state law, however, the Supreme Court decided *Crawford v. Washington*, 541 U.S. 36 (2004), which, abrogating *Ohio v. Roberts*, barred the admission of hearsay statements that are testimonial in nature, save under limited circumstances not applicable here.  Miller notified the Michigan Supreme Court of the decision in *Crawford* while her motion for leave to appeal was pending.  The Michigan Supreme Court denied Miller leave to appeal on April 1, 2004, and denied a motion to reconsider on June 30, 2004. Miller did not seek a writ of certiorari from the United States Supreme Court.

In a split decision on habeas review, this court held that the Michigan courts should have re-adjudicated Miller's claim in light of *Crawford*, since her appeal to the state's highest court was still pending at the time *Crawford* was decided and the state-court decision had therefore not yet become final under state law.  *Miller v. Stovall*, 608 F.3d 913, 919 (6th Cir. 2010), *cert. granted*, *judgment vacated*, 132 S. Ct. 573 (U.S. 2011).  This court further held that the suicide note was testimonial in nature and therefore inadmissible under *Crawford*, that the State had waived harmless-error review, and that, in view of the foregoing, Miller was being held in violation of her clearly established rights under the Confrontation Clause.  *Id.* at 925-28.  Michigan appealed, and the Supreme Court granted certiorari, vacated this court's judgment, and remanded for further consideration in light of its decision in *Greene v. Fisher*, 132 S. Ct. 38, 43 (2011).  In *Greene*, the Court clarified that state courts must follow clearly established law as it existed "at the time of the state-court adjudication on the merits."  That is, under 28 U.S.C. § 2254(d), "clearly established Federal law" is the law at the time the original decision was made, not, as this court had held in *Miller*, 608 F.3d at 919, the law "before the conviction became final."  *See Greene*, 132 S. Ct. at at 44.  Thus, even though Greene's appeal was still pending before the state supreme court when there was

an intervening change in federal law, the state was not required to revisit the original decisions of its trial and appellate courts.  The Supreme Court also observed that Greene had failed to seek certiorari from the U.S. Supreme Court and failed to pursue state post-conviction relief before filing a habeas claim in federal court.  *Id.* at 45.

As relevant here, Miller's case appears to be identical to Greene's.  Because *Crawford* was not decided until after the state trial and appellate courts evaluated Miller's Confrontation Clause claim on the merits, the state courts were not obligated to revisit Miller's claim in light of *Crawford*.  And, as in *Greene*, Miller did not seek relief from the U.S. Supreme Court and did not pursue state post-conviction relief.  In light of the Supreme Court's remand and its decision in *Greene*, we remanded Miller's case to the district court for reconsideration.

The parties now agree that, in light of *Greene*, the relevant law to be applied in assessing the state court's evaluation of Miller's Confrontation Clause claim is the law that existed at the time of the state trial and appellate courts' adjudication on the merits, namely, the law under *Ohio v. Roberts* and its progeny.  The district court denied petitioner relief but granted a Certificate of Appealability ("COA") on the constitutional claims that it found were reasonably debatable.  The district court granted a COA on three issues: (1) whether the Michigan Court of Appeals applied a rule contrary to Supreme Court precedent when it relied on the "consistency" of the statements in Cassaday's suicide note to uphold the admission of the note; (2) whether the court's decision involved an unreasonable application of *Ohio v. Roberts*; and (3) whether the court erred in ruling that the admission of the note did not violate Miller's Confrontation Clause right under the Sixth Amendment. *See Miller v. Stovall*, No. 05-73447, 2012 WL 3151541 (E.D. Mich. Aug. 2, 2012).

We evaluate Miller's claims under the highly deferential standard of review mandated by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* 28 U.S.C. § 2254(d).  AEDPA's deferential standard applies where a state prisoner's habeas claims were "adjudicated on the merits in State court proceedings." *Robinson v. Howes*, 663 F.3d 819, 822-23 (6th Cir. 2011) (quoting 28 U.S.C. § 2254(d)).  Under

AEDPA, habeas relief shall not be granted unless, as relevant here, the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  "AEDPA requires a state prisoner to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error beyond any possibility for fairminded disagreement." *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013) (internal alteration and quotation marks omitted).

## II

### A

In *Ohio v. Roberts*, the Supreme Court held that the statements of a hearsay declarant unavailable for cross-examination at trial were only admissible if they bore "adequate indicia of reliability."  448 U.S. at 66 (internal quotation marks omitted). Where the statements did not fall within "a firmly rooted hearsay exception," they were inadmissible "absent a showing of particularized guarantees of trustworthiness."  *Id.* The "relevant circumstances" for determining whether evidence satisfied this standard included only those that surrounded the making of the statement and that rendered the declarant "particularly worthy of belief."  *Idaho v. Wright*, 497 U.S. 805, 819 (1990).

The Supreme Court has never identified a particular set of requirements that had to be met for a statement to be deemed trustworthy.  *See Wright*, 497 U.S. at 822 ("We . . . decline to endorse a mechanical test for determining 'particularized guarantees of trustworthiness' under the Clause.").  Instead, the Court emphasized that "the unifying principle" was whether the declarant "was particularly likely to be telling the truth when the statement was made."  *Id.*  The *Ohio v. Roberts* line of cases established a "general approach" to determining trustworthiness, and affirmed that "courts have considerable leeway in their consideration of appropriate factors."  *Id.* at 814, 822.

Moreover, "[b]ecause AEDPA authorizes federal courts to grant relief only when state courts act unreasonably, it follows that the more general the rule at issue—and thus

the greater the potential for reasoned disagreement among fair-minded judges—the more leeway state courts have in reaching outcomes in case-by-case determinations." *Renico v. Lett*, 559 U.S. 766, 776 (2010) (citations and internal quotation and alteration marks omitted). Since the Supreme Court expressly granted state courts "considerable leeway" in determining the trustworthiness of a hearsay statement, federal courts may grant relief only when state courts exercise their discretion "unreasonably."

The Michigan state courts developed and applied a reliability standard based on a comprehensive analysis of federal Confrontation Clause law. In *People v. Lee*, following an extensive discussion of *Ohio v. Roberts*, *Idaho v. Wright*, and Confrontation Clause cases related thereto in the federal courts of appeals, a Michigan Court of Appeals identified eight factors as among those "to be considered" when "determining whether a statement has adequate indicia of reliability." 622 N.W.2d 71, 76-80 (Mich. App. 2000). The factors were: "(1) the spontaneity of the statements, (2) the consistency of the statements, (3) lack of motive to fabricate or lack of bias, (4) the reason the declarant cannot testify, (5) the voluntariness of the statements, i.e., whether they were made in response to leading questions or made under undue influence, (6) personal knowledge of the declarant about the matter on which he spoke, (7) to whom the statements were made . . . and (8) the time frame within which the statements were made." *Id.* at 80 (internal citations omitted). The court gave no indication that it believed any one factor to be dispositive. The court also noted that it must consider "the totality of the circumstances surrounding the making of the statement[s]" and that it "may not consider whether evidence produced at trial corroborates the statement[s]." *Id*. Neither the Supreme Court nor any other federal court has suggested that the *Lee* standard was not an appropriate implementation of *Ohio v. Roberts* and its progeny.

**B**

In Miller's case, the Michigan Court of Appeals recited the standard articulated in *Lee*, including the prohibition on considering corroborating evidence; evaluated each of the *Lee* factors in the context of Miller's claim; and determined that the statements in

Cassaday's suicide note were trustworthy and therefore admissible. *People v. Miller*, 2003 WL 21465338 at *2 (Mich. Ct. App. 2003). The court found as follows:

> As noted by the trial court, Cassaday's statements were (1) spontaneous and voluntary because he made them without prompting or inquiry, (2) consistent, (3) made fairly contemporaneously to his impending death, and (4) made from personal knowledge. In addition, Cassaday directed the statements to family members, i.e., his mother and father, people to whom Cassaday would likely speak the truth. Also, the reason Cassaday could not testify, because he had committed suicide, militates in favor of admissibility and supports a lack of motive to fabricate.

*Id.*

### III

### A

In her appeal of the district court's denial of habeas relief, Miller first argues that the Michigan Court of Appeals violated clearly established federal law when it relied on the "consistency" of the statements in Cassaday's suicide note to find the note admissible. In *Idaho*, 497 U.S. at 823, the Supreme Court observed that "the use of corroborating evidence to support a hearsay statement's 'particularized guarantees of trustworthiness' would permit admission of a presumptively unreliable statement by bootstrapping on the trustworthiness of other evidence at trial." Accordingly, the Court held that such corroboration does not provide a basis "for presuming the declarant to be trustworthy." *Id.* Miller argues that the Michigan Court of Appeals violated clearly established Confrontation Clause law when it "relied on the letter's consistency with other evidence in the case to support a finding of reliability." Appellant's Br. at 5.

On closer inspection, there is no indication that the Michigan Court of Appeals upheld the admission of the note because other evidence at trial corroborated its contents. Miller seizes on the court's brief statement of the second *Lee* factor—"the consistency of the statements"—and speculates that the Michigan Court of Appeals must have been comparing Cassaday's statements in the note to other evidence. But all the court did was call the statements "consistent." Nowhere did the court assess the note's

credibility in light of other evidence.  And it would be unreasonable to assume that the court was doing so *sub silentio*, when, in immediately preceding language, the court expressly noted that doing so was impermissible.  Rather, the most natural reading of the court's statement is that "Cassaday's statements" were *internally* consistent i.e. consistent with each other.  To be sure, as discussed below, the internal consistency of the note's statements is not, in itself, a strong indicator of their reliability, but it is a permissible consideration.  There is no reason to think that that one factor among eight was the driving force behind the court's finding.  Regardless, there is no basis for concluding that the court determined the note's trustworthiness on the basis of other evidence.  Accordingly, we reject Miller's claim that the Michigan Court of Appeals acted "contrary to" clearly established law.

**B**

Miller next argues that the Michigan Court of Appeals "unreasonably applied clearly established Confrontation Clause law" in admitting the note.  Appellant's Br. at 20.  Miller argues that the court's application of the *Ohio v. Roberts* line of cases was unreasonable because the court improperly relied on a number of factors in determining that the statements in the note were trustworthy.  Miller claims that the statements were not spontaneous; that the internal consistency and contemporaneousness of the statements and Cassaday's personal knowledge of the events do not indicate reliability; that Cassaday had a motive to lie; and that statements made in a letter turned over to police were not inherently reliable.

As set out above, the Michigan Court of Appeals recited and applied each of the *Lee* factors, and it reasonably concluded that a number of those factors were strong indicators of reliability.  The court of appeals observed that the statements in the note were made voluntarily (factor 5) at a time when Cassaday was not even under investigation in connection with the murder (factor 3).  They were addressed to his parents, people he was unlikely to lie to (factor 7), especially in his final farewell (factor 4), and in a contrite note implicating himself in a heinous crime.  They did not attempt to minimize his role in or responsibility for the murder; on the contrary, they were self-

incriminating statements at a time when, as mentioned, no one suspected his involvement (again, factors 3 and 5). Indeed, the tone and language of the note are those of a man who was distressed, remorseful, and resigned.

In particular, Miller's claim to the contrary notwithstanding, the state court reasonably found that Cassaday lacked a motive to fabricate the letter's contents. Miller claims that Cassaday was a codefendant of Miller's and that, therefore, his statements concerning Miller's guilt are not credible: "The Supreme Court has repeatedly held that a non-testifying co-defendant's statements that implicate a defendant are presumptively unreliable and their admission violates the Confrontation Clause." *Bulls v. Jones*, 274 F.3d 329, 334 (6th Cir. 2001), *abrogated on other grounds by Eddleman v. McKee*, 471 F.3d 576 (6th Cir. 2006). While it is true that the confessions of a codefendant are presumed to be unreliable, Cassaday was *not* a codefendant, and there was no indication that he thought he would become one. He was not under investigation and, of course, would not have been subject to post-mortem jeopardy. Cassaday was not in the position of the typical codefendant, who may be motivated to lie in order to cut a deal with the government or shift responsibility to another party.

Miller further argues that the note is suspect because it "was designed to go to law enforcement," Appellant's Br. at 32, but the record does not support that inference; on the contrary, the note was addressed to Cassaday's parents, Cassaday had already directed a separate package of materials to law enforcement that did not include information in or about the note, the note had no language suggesting that it be passed on, and the other two similar notes—to Cassaday's son and ex-wife—never surfaced.

Miller suggests that Cassaday implicated her in the note because he wanted her to, in Cassaday's words, "get what is coming." While that may explain why he directed the other evidence to law enforcement, it does not explain why he would lie in the suicide note to his parents. In addition, the only apparent reason that Cassaday would take so drastic an action to punish Miller—compiling all this evidence before committing suicide—is if she did in fact manipulate him into killing her husband. Finally, it was not unreasonable for the court of appeals to find that Cassaday was less

likely to lie knowing that his death was imminent.  In view of all the foregoing, Miller's view of the note as a strategic maneuver designed to incriminate her is implausible.

Although a number of the other *Lee* factors cited by the court of appeals—and objected to by Miller—were not strong indicators of reliability in this case, the court's decision to evaluate them was appropriate:  Although the presence of those factors here does not, by itself, indicate reliability, their absence would surely undermine it.  These additional factors were not impermissible considerations and they do nothing to undermine the more significant indicators of reliability discussed above.  We address the merits of each of these additional factors below.

We turn first to the appellate court's finding that the statements were "consistent."  The prototypical cases in which internal "consistency" may indicate reliability are cases of child sexual abuse.  *See Wright*, 497 U.S. at 821 (citing "spontaneity and consistent repetition" as one factor that "properly relate[s] to whether hearsay statements made by a child witness in child sexual abuse cases are reliable").  In *Stuart v. Wilson*, 442 F.3d 506, 523 (6th Cir. 2006), the child, D.S., recounted on two occasions the same facts concerning his abuse—including the explicit nature of the conduct and the identity of the abuser:  once when he was three years old, to his cousin; and once when he was five years old, to his parents and the investigating detective in that case.  We held that, "[w]ith respect to consistent repetition . . . the fact that D.S. told the same story more than two years after his statements to Cousin Cindy especially supports the reliability of D.S.'s statements."  *Id.*  Here, however, we are not dealing with testimony repeated on different occasions and in different contexts.  Although any inconsistency in Cassaday's statements would no doubt have undermined their credibility, the fact that his singular, unexamined account was coherent is not a significant "guarantee of trustworthiness."

Similarly, spontaneity may or may not indicate reliability.  We have found that spontaneity, like consistency, may be a good indicator of reliability in cases of child sexual abuse.  In *Stuart*, we cited approvingly the state trial court's finding of trustworthiness where "D.S.'s statements to Aunt Sue and Cousin Cindy, where both

asked D.S. what he was doing when he was playing with his penis, were spontaneous, clearly not orchestrated or directed." *Id.* at 511 (citations and internal quotations marks omitted). We have also found that spontaneity may indicate reliability where it was "a spontaneous reaction to an exciting event" rather than the "result of reflective thought." *United States v. Scott*, 69 F. App'x 317, 321 (6th Cir. 2003). This kind of spontaneity is typically invoked in the context of the "excited utterance" exception to the hearsay rule. *See, e.g., United States v. Arnold*, 486 F.3d 177, 186 (6th Cir. 2007) (affirming the admission of the victim's "spontaneous" statement—"that's him, that's the guy that pulled the gun on me, Joseph Arnold, that's him"—on the ground that it was prompted by the unexpected appearance of the victim's assailant).

Cassaday's statements were not "excited utterances": though prepared in anticipation of suicide, they were not sudden reactions to a startling event; rather, they were reflections that were typed, printed, and placed in an envelope, along with the other notes and materials Cassaday had carefully assembled. To be sure, the suicide-note statements were spontaneous in the sense that they were voluntary and unprompted, and may therefore be more reliable than statements offered in response to questioning. But this kind of spontaneity does not, by itself, constitute a "particularized guarantee of trustworthiness."

Nor does the fact that the statements in the note were made from "personal knowledge"—a basic requirement for the testimony of any lay witness, *see*, *e.g*., Fed. R. Evid. 602—strongly support a finding of reliability here. While it is, of course, important that Cassaday's statements contained information that he would have "personally known," that does not speak to whether the information was true, and therefore, trustworthy.

Finally, depending on the context, contemporaneousness, too, may or may not indicate reliability. Statements are more likely to be accurate the closer they are in time to the events they describe. So for example, a disinterested witness is more likely to give an accurate account of a car accident minutes after it takes place than months or years later. And at any given point in time, the witness is more likely to remember certain

facts than others.  On the other hand, contemporaneousness is of limited value in assessing the *honesty* of a given statement.  A criminal could concoct a story in a matter of minutes, and could do so in advance of committing the crime.  Contemporaneousness may indicate that statements were truthful only where the speaker would not have had time to fabricate a story.  Indeed, that is the spirit behind the traditional "present sense impression" and "excited utterance" exceptions to the hearsay rule.  "The exception for present sense impression permits the introduction into evidence of a 'statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter.'" *United States v. Price*, 58 F. App'x 105, 106 (6th Cir. 2003) (citing Fed. R. Evid. 803(1)).  Similarly, under the excited-utterance exception, "[a] statement relating to a startling event may be admitted . . . where: 1) the event was startling enough to cause nervous excitement; 2) the declarant made the statement following the event, but before there was time to contrive or misrepresent; and 3) the declarant was still under the stress of the excitement when making the statement." *Id.* (citing Fed. R. Evid. 803(2)).

Here, the state appellate court found that Cassaday's statements were made "fairly contemporaneously to his impending death."  As far as accuracy is concerned, the relevant timeframe is the amount of time that elapsed between the events in question and Cassaday's description of those events; the timing of his suicide is irrelevant.  One would expect that Cassaday would still be able to accurately recall his and Miller's involvement in the murder three months after it occurred.  But the contemporaneousness of the note to the murder does not indicate that the statements contained therein were truthful.  In contrast, its proximity to his suicide may fairly indicate reliability.  As the Supreme Court has noted, the basis for the "dying declaration" exception to the hearsay rule is that "the sense of impending death is presumed to remove all temptation to falsehood, and to enforce as strict an adherence to the truth as would the obligation of oath." *Wright*, 497 U.S. at 820 (quoting *Mattox v. United States*, 156 U.S. 237, 243 (1895)).  Although Cassaday's statements do not qualify as "dying declarations," it was reasonable for the court of appeals to find that Cassaday's statements were reliable on similar grounds.

Although some parts of the Michigan Court of Appeals' application of the reliability factors may be arguable, and though some of the factors it cited were inapposite, the court reasonably identified other, more powerful indicia of reliability, which, taken together, reasonably allowed the court to approve the admission of the note at trial. These indicia included that the note was written when Cassaday knew his death was imminent, that it was written voluntarily and unprompted; that it was addressed to his parents; the note's contrite tone; and its confessional, self-incriminating content. The question before us is not whether we would have admitted the note in the first instance; rather, it is whether the Michigan trial and appellate courts' decisions were unreasonable in light of clearly established federal law. We cannot say that the admission of the note was "so lacking in justification that there was an error beyond any possibility for fairminded disagreement." *Burt*, 134 S. Ct. at 16 (citations and quotation and alteration marks omitted). Accordingly, we conclude that its admission was not an unreasonable application of clearly established law.

## C

The third and final issue certified for appeal by the district court was whether the district court erred in ruling that the admission of the note did not violate Miller's Confrontation Clause right. Miller does not argue that her right of confrontation was violated other than on the grounds previously discussed. Accordingly, this last issue has no independent substance to it. Based on the foregoing, we hold that the Michigan Court of Appeals did not violate Miller's clearly established rights under the Confrontation Clause.

## IV

Because we hold that the Michigan Court of Appeals did not act contrary to or unreasonably apply clearly established law, we need not consider the State's argument in the alternative that any error was harmless in light of the overwhelming evidence of Miller's guilt. The judgment of the district court is AFFIRMED.

---

**CONCURRENCE IN THE JUDGMENT**

---

KAREN NELSON MOORE, Circuit Judge, concurring in the judgment. I agree that habeas relief is unwarranted at this time. In light of *Greene v. Fisher*, 132 S. Ct. 38, 43 (2011), I agree with the majority opinion that the "clearly established federal law" applicable in this case is the law under *Ohio v. Roberts*, 448 U.S. 56, 66 (1980), which permits the admission of hearsay evidence when the declarant is unavailable for cross-examination only if the evidence bears "adequate 'indicia of reliability.'" I cannot say that the admission of Cassaday's suicide note was contrary to or an unreasonable application of the relevant federal law. *See* 28 U.S.C. § 2254(d). Therefore, I join in the judgment affirming the judgment of the district court.