**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 15a0654n.06

Case No. 14-1412

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| JAVON FRANKLIN ELLIS, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

FILED
Sep 25, 2015
DEBORAH S. HUNT, Clerk

BEFORE: SILER, COOK, and WHITE, Circuit Judges.

COOK, Circuit Judge. A jury convicted Javon Franklin Ellis of firearm and drug-trafficking charges, and the district court sentenced him to 240 months' imprisonment. On appeal, Ellis challenges 1) the district court's denial of his motion to suppress, 2) several evidentiary rulings, 3) the sufficiency of the evidence supporting his conviction, 4) the court's career-offender findings, and 5) an alleged defect in the evidence presented to the grand jury. Finding no merit in his arguments, we AFFIRM.

I.

Ellis purchased a Volvo from Fadil Issa, his employer's brother, in January 2012. He regretted his purchase and returned to Issa's lot for repairs several times over the next few weeks. During one visit, Ellis "flashed" a gun that was equipped with a laser sight. Eventually,

Issa agreed to let Ellis trade the Volvo for a Buick. Issa thoroughly searched the Buick over multiple days before Ellis took possession and testified that he did not find a gun in the vehicle. When Ellis arrived to make the trade, Issa observed a gun on the floor of the Volvo. He did not see Ellis move the gun to the Buick but he testified that he did not find a gun in the Volvo after Ellis turned it over.

A few hours after Ellis acquired the Buick, Eastern Michigan University Police Department Officer Joseph Hogan stopped the car in Ypsilanti, Michigan after a random records search revealed that the Buick's plates were registered to the Volvo. Ellis was alone in the Buick at the time, and he produced paperwork showing that he had transferred the plates from the Volvo. Hogan claims that he smelled "fresh" marijuana, *i.e.*, marijuana that had not been burned or smoked, when he approached the vehicle. He pressed Ellis about the smell, and Ellis eventually reached into the center console and turned over a glass jar containing 19.72 grams of marijuana.

After arresting Ellis, Hogan searched the Buick for drugs. He did not discover additional marijuana or any drug paraphernalia, but he did find a loaded semi-automatic handgun in the pocket behind the front passenger's seat. The gun had been reported stolen. A forensic examiner with the Michigan State Police found a single latent print that did not match Ellis's on the weapon's magazine but no discernible prints on the firearm itself. Police officers also recovered a mobile phone from Ellis's pocket.

A grand jury issued a three-count indictment charging Ellis with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e), possessing marijuana with the intent to distribute in violation of 21 U.S.C. § 841(a)(1), and possessing a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c).

The court denied Ellis's motion to suppress the evidence seized during Officer Hogan's search of the Buick, and the case proceeded to trial. The jury heard that Ellis used his mobile phone to discuss prices and amounts and set up drug transactions, including a proposed exchange on the day of his arrest.

The jury found Ellis guilty on all three counts following a two-day trial. The district court imposed consecutive mandatory-minimum five- and fifteen-year sentences as required by 18 U.S.C. § 924(c) and (e). In total, the court sentenced Ellis to 180 months' imprisonment for being a felon in possession of a firearm; a concurrent sentence of 90 months' imprisonment for possessing marijuana with intent to distribute; and a consecutive sentence of 60 months' imprisonment for possessing a firearm in furtherance of drug trafficking. Ellis timely appealed.

II.

Ellis first challenges the district court's denial of his motion to suppress the evidence seized during the traffic stop.

During an evidentiary hearing on the motion, Officer Hogan testified that he smelled "fresh marijuana" when he approached Ellis's car. He said he was standing approximately three feet away from the central console when he noticed the smell. Officer Hogan admitted that the jar of marijuana Ellis produced had its lid screwed on. Ellis's attorney produced two sealed Mason jars, one containing ammonia and the other bleach. He stood approximately three feet away from the witness stand and asked Officer Hogan if he could smell their contents. Officer Hogan could not. Ellis's attorney later posited that Officer Hogan's inability to smell either substance cast doubt on the credibility of his testimony.

The district court accepted Officer Hogan's account and denied Ellis's motion. It specifically addressed Ellis's argument that Officer Hogan could not smell marijuana through a closed Mason jar:

> At the hearing, Ellis attempted to challenge Hogan's ability to detect the smell of marijuana through a closed mason jar. To support his argument, Ellis provided two unmarked mason jars as demonstrative exhibits for Hogan to smell. Defense counsel claimed that one mason jar contained bleach and the other ammonia. Hogan was not required to smell the jars although one was opened near him. . . . Ellis' science experiment did not bolster his argument. There is no evidence that the mason jar containing marijuana had been opened or the contents smoked prior to the investigatory stop, allowing the smell to linger in the air, or that it was closed for a long period of time. Also, as an officer, Hogan testified that he had experience with detecting the smell of marijuana. There was no testimony regarding his recognition of the smell of bleach or ammonia.

(R. 42, Order Denying Mot. Suppress at 4 n.2.)

According to Ellis, the district court's failure to address Officer Hogan's ability to smell marijuana through a "hermetically sealed" Mason jar permits this court to "make a *de novo* finding that [O]fficer Hogan's testimony was incredible." (Appellant's Br. at 14.) But the district court specifically addressed Ellis's challenge to Officer Hogan's account, and we review its credibility finding for clear error. *See United States v. Hinojosa*, 606 F.3d 875, 880 (6th Cir. 2010); *United States v. McCauley*, 548 F.3d 440, 447 (6th Cir. 2008).

Applying that standard, we are not "left with the definite and firm conviction that a mistake has been committed." *United States v. Wheaton*, 517 F.3d 350, 367 (6th Cir. 2008) (quoting *United States v. Darwich*, 337 F.3d 645, 664 (6th Cir. 2003)). Although Officer Hogan admitted that the lid of the Mason jar was screwed on when Ellis produced the jar, Ellis presented no evidence to support his counsel's assertion that the jar was "hermetically sealed." Further, even if the jar's lid prevented odors from escaping, Ellis could have opened the jar at

some point before being pulled over and the smell could have lingered in the air. In sum, the district court did not clearly err in finding Officer Hogan's testimony credible.

III.

Next, Ellis challenges several evidentiary rulings made before and during trial. He disputes the admissibility of text messages discovered on his mobile phone and argues that the court abused its discretion in excluding an exculpatory statement he made during his arrest. We review the district court's evidentiary rulings for abuse of discretion. *See United States v. Yu Qin*, 688 F.3d 257, 261 (6th Cir. 2012). "We will find that a district court has abused its discretion when we are 'left with the definite and firm conviction that the district court committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.'" *Id.* (quoting *United States v. Jenkins*, 345 F.3d 928, 936 (6th Cir. 2003)).

*A. Admission of Text Messages*

The government used Ellis's outgoing messages to prove his intent to distribute the marijuana found in his possession. Ellis maintains that the phone's outgoing messages constitute hearsay statements, inadmissible as admissions of a party-opponent under Federal Rule of Evidence 801(d)(2) because the government failed to "show[] that [Ellis] is in-fact the declarant." (Appellant's Br. at 24.) But Ellis cannot point to any clear error in the district court's preliminary finding that it was more likely than not that he made the statements in question. *See* Fed. R. Evid. 104. As the court noted, several pieces of evidence supported that finding: the phone was in his possession, contained photographs of Ellis and text messages addressed to "J" and "Javon," and listed his brother and girlfriend as contacts

Ellis also challenges the admission of incoming messages stored on the phone, arguing that they fail to qualify as nonhearsay co-conspirator statements. *See* Fed. R. Evid. 801(d)(2)(E).

The district court, however, held that *none* of the incoming text messages constituted hearsay because they were used to prove that individuals repeatedly contacted Ellis for narcotics purchases, not for their truth. *See, e.g.*, *United States v. Rodriguez-Lopez*, 565 F.3d 312, 315 (6th Cir. 2009) ("Even if the statements were assertions, the government offers them, not for their truth, but as evidence of the fact that they were made. The fact that Rodriguez received ten successive solicitations for heroin is probative circumstantial evidence of his involvement in a conspiracy to distribute heroin."). Because the court admitted all of the incoming text messages on an alternative basis that Ellis fails to address on appeal, he cannot show prejudicial error. *See United States v. Williams*, 544 F.3d 683, 690 (6th Cir. 2008).

Along with his hearsay arguments, Ellis maintains that the text messages "unfairly characterize" him as a drug dealer and should therefore have been excluded under the Rule 403 balancing test. *See* Fed. R. Evid. 403. But we see nothing unfair about any prejudice resulting from relevant circumstantial evidence of Ellis's intent to distribute marijuana.

B.      *Exclusion of Ellis's Statement to Officer Hogan*

Ellis also contends that the district court abused its discretion in excluding, as hearsay, a statement he made following Officer Hogan's discovery of the firearm: "You found a gun, that's bad. I never shouldn't [sic] have ever bought that car." (R. 98, Response to Mot. to Exclude at 4.) Ellis argues that his statement qualifies as a present-sense impression because he spoke as soon as Officer Hogan returned to the squad car carrying the gun. *See* Fed. R. Evid. 803(1). Courts may admit hearsay statements that "describ[e] or explain[] an event or condition, made while or immediately after the declarant perceived it." *Id.*

Officer Hogan told the court that Ellis waited ten or fifteen yards away in the squad car while Hogan searched the Buick, found and unloaded the gun, and returned to the squad car

carrying it. Based on that evidence, the district court declined to admit the statement as a present-sense impression, reasoning that Ellis had "a period of time and some motive to contrive a statement that he should not have bought the car." (R. 128, Day 1 Trial Tr. at 96.) In so holding, the court appears to have applied this circuit's standard for admitting excited utterances under Federal Rule of Evidence 803(2) rather than the standard for admitting present-sense impressions under Rule 803(1). *See United States v. Penney*, 576 F.3d 297, 313 (6th Cir. 2009) ("We have held [that the excited-utterance] exception requires the moving party to show, *inter alia*, that the statement was 'made before there is time to contrive or misrepresent.'" (quoting *United States v. Arnold*, 486 F.3d 177, 184 (6th Cir. 2007) (en banc))).

Nevertheless, it is not clear that the district court erred. The present-sense-impression and excited-utterance exceptions are both grounded on the notion that a person is more likely to speak truthfully before he has time to reflect. *See Miller v. Stovall*, 742 F.3d 642, 650 (6th Cir. 2014) ("Contemporaneousness may indicate that statements were truthful only where the speaker would not have had time to fabricate a story. Indeed, that is the spirit behind the traditional 'present sense impression' and 'excited utterance' exceptions to the hearsay rule."); *see also United States v. Green*, 556 F.3d 151, 155–56 (3d Cir. 2009) ("The fundamental premise behind [the present-sense-impression] hearsay exception 'is that substantial contemporaneity of event and statement minimizes unreliability due to the declarant's defective recollection or conscious fabrication.'" (quoting *United States v. Manfre*, 368 F.3d 832, 840 (8th Cir. 2004))). Here, the court's finding that Ellis had a "period of time . . . to contrive a statement" suggests that the district court assessed his statement as lacking the indicia of reliability justifying Rule 803(1)'s exception for hearsay statements made during or immediately after the events they describe or explain.

And in any event, we are confident that any error in excluding the statement failed to affect the outcome of the trial, given other evidence that Ellis knowingly possessed the gun. *See United States v. Marrero*, 651 F.3d 453, 471 (6th Cir. 2011).

IV.

Ellis also challenges the sufficiency of the government's proof at trial. In considering his argument, we "view[] the evidence in the light most favorable to the prosecution" and must affirm if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Washington*, 715 F.3d 975, 979 (6th Cir. 2013) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The government's proof easily meets that low bar.

First, the government presented adequate evidence to convict Ellis of being a felon in possession of a firearm. Ellis stipulated to his prior felony conviction, and the government proved that he knowingly possessed the firearm and that it moved in interstate commerce. *See* 18 U.S.C. §§ 922(g)(1), 924(a)(2). Markings showing that the gun originated in Connecticut satisfied the interstate-commerce requirement. As for knowing possession, Officer Hogan found a gun in Ellis's Buick matching the description of the firearm Fadil Issa saw Ellis carrying on an earlier occasion. Further, when Ellis arrived to trade in the Volvo, Issa observed a gun on the car's floor that disappeared when Ellis transferred his possessions to the Buick. Finally, Issa denied seeing a gun when he and his employees searched the Buick thoroughly before turning it over to Ellis.

Ellis questions the credibility of Issa's testimony, noting inconsistencies with other evidence and Issa's failure to notify the police about Ellis's possessing a gun on his property. But challenges to witness credibility attack "the quality of the government's evidence and not the

sufficiency of the evidence." *United States v. Henderson*, 626 F.3d 326, 341 (6th Cir. 2010) (quoting *United States v. Graham*, 622 F.3d 445, 449 (6th Cir. 2010)).

Ellis also challenges the sufficiency of the evidence showing his intent to distribute marijuana. He suggests that a rational juror could only find that he possessed drugs for personal use, because the Mason jar contained only a small amount of loose marijuana and Officer Hogan did not find any packaging materials or other paraphernalia consistent with drug trafficking during his search of the Buick. But Ellis possessed enough marijuana to satisfy at least two quarter-ounce orders and he sent a text message earlier that day confirming that he could sell a "qua[r]ter." A rational juror could therefore infer his intent to distribute the marijuana in his possession.

Because Ellis relies on his failed challenges to the first two counts to attack the sufficiency of proof that he possessed a firearm in furtherance of a drug trafficking crime, we affirm his conviction on this count as well. Several factors support the conclusion that Ellis possessed the firearm "in furtherance" of drug trafficking. *See United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001) (listing relevant factors). Ellis "strategically located" the weapon in the back pocket of the passenger's seat, making it "quickly and easily available for use," and the gun was loaded at the time of the search and had been reported stolen. *See id.*

V.

We turn next to Ellis's argument that the district court improperly imposed mandatory-minimum sentences under the Armed Career Criminal Act and the career-offender sentencing guidelines.

A.      *Constitutional Challenge Under* Alleyne

First, Ellis argues that the court violated his Sixth Amendment rights by sentencing him to a mandatory-minimum fifteen-year sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e), without requiring the government to prove his previous convictions to the jury. He relies on *Alleyne v. United States*, 133 S. Ct. 2151, 2155 (2013), which held that "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." But *Alleyne* expressly declined to address whether its holding applied to the fact of prior convictions, leaving intact the "narrow exception" recognized in *Almendarez-Torres v. United States*, 523 U.S. 224 (1998). *Alleyne*, 133 S. Ct. at 2160 n.1. And our published decisions instruct that *Almendarez-Torres*'s carve-out remains good law until expressly overruled by the Supreme Court, foreclosing Ellis's constitutional challenge. *See, e.g.*, *United States v. Nagy*, 760 F.3d 485, 488–89 (6th Cir. 2014) (affirming mandatory-minimum § 924(e) sentence); *United States v. Cooper*, 739 F.3d 873, 884 (6th Cir. 2014) (affirming sentence imposed under the career-offender sentencing guidelines).

B.      *Challenge to the Application of the Career-Offender Guidelines*

Ellis also challenges the district court's finding that he had previously been convicted of at least two felony crimes of violence or controlled substance offenses and therefore qualified as a career offender under the sentencing guidelines. U.S.S.G. § 4B1.1(a). Ellis contends that his three prior convictions—two for robbery and one for homicide solicitation—should have counted as a single conviction for purposes of the career-offender enhancement. But Ellis solicited a murder while in jail *after* his arrest for the armed robberies. His argument that no intervening arrest separated the offenses thus fails, as the guidelines define an "intervening arrest" as one in which "the defendant is arrested for the first offense *prior to committing the*

*second offense*." U.S.S.G. § 4A1.2(a)(2) (emphasis added). Given the intervening arrest, the district court correctly tallied Ellis's convictions. *See id.* ("Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest . . . .").

## VI.

Finally, Ellis argues for the first time on appeal that the government submitted misleading evidence to the grand jury. He claims, without record support, that the grand jury received evidence that Ellis possessed more than the 19.72 grams of marijuana stipulated to at trial because the government erroneously included the weight of the Mason jar in its drug calculations. He also contends, again without record support, that the government failed to turn over grand jury transcripts that would have exposed the alleged misrepresentation. Ellis never moved in the district court to compel disclosure or to challenge the indictment. *See* Fed. R. Crim. P. 6(e)(3)(E)(ii); Fed. R. Crim. P. 12(b)(3)(A). He therefore forfeited any objection to his indictment on appeal, and we review for plain error. *See United States v. Soto*, No. 13-2300, 2015 WL 4503261, at *12 (6th Cir. July 24, 2015).

Ellis cannot carry his burden of showing plain error, because any defect in the grand jury proceedings was ultimately harmless. *See United States v. Cobleigh*, 75 F.3d 242, 251 (6th Cir. 1996) (citing *United States v. Mechanik*, 475 U.S. 66, 71–73 (1986)). Regardless of the drug amount presented to the grand jury, Ellis stipulated to the quantity of marijuana he turned over to Officer Hogan and the petit jury convicted him of possession. Although Ellis speculates about the "remote" possibility of the grand jury returning an indictment grounded on his possession of just 19.72 grams, the petit jury's verdict demonstrates probable cause to indict him on the marijuana-possession count. *See Mechanik*, 475 U.S. at 67 (finding error during grand jury

- 11 -

proceedings harmless because "the petit jury's verdict of guilty beyond a reasonable doubt demonstrates *a fortiori* that there was probable cause to charge the defendants with the offenses for which they were convicted").

In short, we discern no reversible error in the grand jury proceedings.

VII.

For those reasons, we AFFIRM the district court's judgment.