# Order

**Michigan Supreme Court**
**Lansing, Michigan**

December 2, 2009

138233

Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway,
Justices

PEOPLE OF THE STATE OF MICHIGAN,
      Plaintiff-Appellee,

v

SC: 138233
COA: 278901
Wayne CC: 03-007369-01

JOHN DAVID STOCKMAN,
      Defendant-Appellant.

_____/

      On order of the Court, the application for leave to appeal the December 18, 2008 judgment of the Court of Appeals is considered and, pursuant to MCR 7.302(H)(1), in lieu of granting leave to appeal, we REMAND this case to the Wayne Circuit Court for an evidentiary hearing to determine whether trial counsel was ineffective for failing to investigate and present medical testimony that the child complainant's allegations are medically implausible or impossible, as described in the affidavits of Drs. Lee and Richter. We DIRECT that court to commence the hearing within 35 days of the date of this order. We further ORDER that court to submit a transcript of the hearing along with its findings of fact and conclusions of law to the Clerk of this Court within 28 days of the conclusion of the hearing. Within 21 days after the transcript is filed, the parties may file supplemental briefs with the Clerk of the Supreme Court. With respect to defendant's claims regarding forensic testing of the "turkey baster," leave to appeal is DENIED, because the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D).

      We retain jurisdiction.

      CORRIGAN, J. (*concurring*).

      I concur in the order remanding to the trial court for an evidentiary hearing and retaining jurisdiction. I write separately to present my view of the trial court's task on remand.

The victim, JB, who was six years old at the time of trial, accused defendant of, among other things, penetrating her genitals with a turkey baster (or "gravy thing"). At trial JB testified as follows:

Q.    What did he do with this gravy thing?

A.    He put that up here.

Q.    He put it where?

A.    Up in here.

      [*Prosecuting Attorney*] *Hall*.   Okay.   For the record, she has just pointed to her genital area.

*Ms. Hall* (continuing)

Q.    Do you have a name for that?

A.    No.

Q.    What do you use it for?

A.    Using it.

Q.    I'm sorry?

A.    Using the bathroom.

Q.    To use the bathroom.  And tell me about what he did with this, with this gravy thing.

A.    (No response)

Q.    You don't know?

A.    No.

Q.    Now, did it go into where you—where pee comes out?

A.    Um-hum.

      [*Defense Counsel*] *Taratuta*.  Objection.  That's leading.

*The Court.* Overruled. Go ahead, counsel.

Ms. Hall. Thank you.

Ms. Hall. (continuing)

*Q.* [JB], did—[JB], look at me. Did this gravy thing go into where pee comes out?

*A.* Yes.

*Q.* Okay. Which portion, which side of it did? Do you remember? Could you point? [The prosecutor held a turkey baster.]

*A.* Um-hum.

*Q.* Okay.

*A.* This one.

*Q.* Okay. Which portion of it, which side of it went into where pee comes out? Could you point? Do you know? Is that a no?

*A.* No.

*Q.* Okay. How do you know that he used this and put this in where pee comes out?

*A.* Because he told me.

*Q.* Okay. Did you feel anything?

*A.* Yes.

*Q.* What did it feel like?

*A.* It feel [sic] like it was in my stomach.

*Q.* It felt like what?

*A.* It felt like in my stomach.

*Q.*     Okay.  Did it hurt?

*A.*     (Nodding yes)

*Q.*     Is that a yes?

*A.*     Yes.

Dr. Hon Lee, who examined JB for sexual abuse some time after the alleged incident occurred, also testified at trial.  Lee testified that he did not "find any trauma" to JB's genital area.  Lee confirmed that he was aware that JB alleged that "an object . . . was inserted into [her] genital area."  But he stated that "[y]ou may or you may not" discover an injury as a result of insertion.  Rather, his "conclusion was the general examination was normal, but sexual abuse cannot be ruled out because the time [sic] has passed since the alleged abuse."

The jury convicted defendant, among other offenses, of first-degree criminal sexual conduct under MCL 750.520(b)(1)(a) (sexual penetration of a person under 13 years of age) based on his insertion of the turkey baster into JB's genitals.  For purposes of such a conviction, "sexual penetration" means "sexual intercourse, cunnilingus, fellatio, anal intercourse, or *any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body*, but emission of semen is not required."  MCL 750.520a(r) (emphasis added).  Defendant appealed and the Court of Appeals affirmed.  *People v Stockman,* unpublished opinion per curiam of the Court of Appeals, issued March 22, 2005 (Docket No. 251711).

Defendant subsequently filed a motion for relief from judgment, which the trial court denied.  The Court of Appeals initially denied leave for lack of merit.  *People v Stockman,* unpublished order of the Court of Appeals, entered October 11, 2006 (Docket No. 269343) (*Stockman I*).  Defendant then filed an application for leave with this Court and we remanded to the Court of Appeals for consideration as on leave granted.  *People v Stockman,* 478 Mich 923 (2007).[1]  On remand, the Court of Appeals again affirmed

---

[1] We directed the Court of Appeals to consider:

> (1) whether the defendant has raised a "significant possibility" that he is innocent of the alleged crimes under MCR 6.508(D)(3); (2) whether the affidavits accompanying the defendant's motion for relief from judgment entitle him to an evidentiary hearing on any of the issues his application has raised regarding that proposed evidence; and (3) whether the defendant is entitled to an evidentiary hearing on the ineffective assistance of trial counsel for the alleged failures to investigate and procure

defendant's convictions. *People v Stockman,* unpublished opinion per curiam of the Court of Appeals, issued December 18, 2008 (Docket No. 278901) (*Stockman II*). Defendant again applied to this Court for leave to appeal.

At issue are two affidavits that defendant claims establish that JB's testimony at trial was medically impossible. First, Lee stated in an affidavit that, when he testified at trial, he "was not told what [defendant] was being accused of, and was not shown a 'turkey baster' in relation to the allegation and my medical examination of the child." He stated that he "also was not told of the testimony of the child." He continued:

> After observing an identical plastic *turkey baster*, and reviewing the testimony of the child, and my own dictation of the medical report, I have come to the following conclusions:
>
> a. vaginal insertion with an instrument of the size and composition of a plastic "turkey baster" in a way described by the victim would have caused severe damage of the delicate structures of the vagina in a six year old child with an average hymenal orifice diameter of only 4 to 6 mm.
>
> b. such damage would include tear of the hymen, fossa navicularis and posterior fourchette. As well, such tear if at all had existed, would cause permanent scarring of tissues easily recognizable by the trained eyes. I did not appreciate any of those findings.
>
> I conclude that the testimony of the child is medically impossible.

A second doctor, Dr. Mark Richter, offered a similar affidavit. Richter stated that he had reviewed JB's testimony, Lee's testimony, and "the medical reports of the clinical examination of the child after an allegation of sexual assault was made." Richter dubiously added, with no citation to the court record or supporting documentation, that "[t]he child reported to authorities and testified that she was sexually assaulted by [defendant] by insertion of a '*turkey baster*' deep into her vaginal canal, internally to the point of her abdomen, causing extreme pain." He thus concluded that, because Lee did not discover any injuries, "[t]he medical examination and testimony of Dr. Lee are medically inconsistent with the allegation and testimony of the child." He continued:

> Given the scenario presented, that a "*turkey baster*" was inserted deep into the 6-year-old child's vagina, from a medical standpoint, it is difficult to imagine any series of events involving a vaginal insertion of an instrument the circumference of a "*turkey baster*" (approx. 7/16 of 1 inch

the favorable medical testimony referenced in the affidavits. [478 Mich 923 (2007).]

increasing to a 1" diameter) into the small vaginal canal of a 6 year old child (maximum approx. ½") without application of oil based lubrication, and accomplish an absence of scarring, tearing, or damage or rupture of the child's Hymen, that would present a complete absence of evidence of injury upon clinical examination.

As a practicing physician, I conclude that there is such a major disconnect from a medical standpoint between the report/testimony of the child reporting a deep, vaginal insertion with a "*turkey baster*" of increasing diameter and the medical report and testimony of the examining physician, Dr. Lee, providing a complete absence of symptoms of sequalae [sic] of a vaginal insertion (Hymen damage or rupture [especially where it commented that the Hymen border is "thin"], tearing, scarring, discharge, etc.) that, presuming the medical report and testimony are accurate, the version provided by the child is medically impossible. [Brackets in original.]

In *Stockman II,* the Court of Appeals concluded that neither affidavit created an issue of fact warranting an evidentiary hearing regarding the ineffective assistance of counsel or the possibility of defendant's innocence. Most significantly, the Court of Appeals observed that the affidavits

are based on the factual premise that the baster penetrated deep into JB's vagina to the point of the abdomen, a premise not supported by the record. JB never testified how much of the baster entered her genital area and never testified that it actually entered her vagina. She testified only that it "felt like" it was in her stomach. A child of six is not likely familiar with the sensation of an object in her genital area or with the anatomical structures that lie between the labia majora and the stomach, and thus JB's testimony was more likely a figurative description of the sensation rather than a literal description of the extent of penetration. Her testimony established only that some part of the baster entered some part of her genital area, not that the full length of the baster was inserted into the vagina and beyond. . . . [E]ven the former is sufficient to sustain a conviction, *People v Bristol*, 115 Mich App 236, 238; 320 NW2d 229 (1981) . . . . [*Stockman II*, *supra* at 3.]

The Court of Appeals offers a very plausible—arguably the most plausible—interpretation of JB's testimony. Indeed, the affiants' presumptive descriptions of her testimony, particularly that of Richter, border on spurious; Richter's exaggerated assertion that JB testified that defendant inserted the turkey baster "deep into her vaginal canal, internally to the point of her abdomen, causing extreme pain" is by no means a more accurate description of the testimony than that offered by the Court of Appeals.

To my mind, the only error committed by the Court of Appeals was its failure to acknowledge that, at most, JB's testimony could be interpreted as ambiguous with regard to how deep defendant inserted the turkey baster. Because a jury *could* have concluded that her testimony described deep insertion, the trial court on remand *could* find that trial counsel was ineffective for failing to present medical testimony such as that offered in Lee's and Richter's affidavits. But the trial court on remand by no means must accept at face value the affiants' characterizations of JB's testimony. Rather, the court simply must determine, as stated in our order, "whether trial counsel was ineffective for failing to investigate and present medical testimony that the child complainant's allegations were medically implausible or impossible, as described in the affidavits."



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

December 2, 2009

_____
Clerk

d1124