**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 15a0661n.06

No. 14-1111

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Sep 30, 2015
DEBORAH S. HUNT, Clerk

JOHN STOCKMAN,

    Petitioner-Appellant,

v.

MARY BERGHUIS, Warden,

    Respondent-Appellee.

)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF
MICHIGAN

Before: DAUGHTREY and CLAY, Circuit Judges; ECONOMUS, District Judge.[*]

PER CURIAM. John David Stockman, a Michigan prisoner proceeding *pro se*, appeals the district court's judgment denying his petition for a writ of habeas corpus filed under 28 U.S.C. § 2254, based on Stockman's claims that his trial attorney rendered ineffective assistance of counsel by failing to investigate and mount a defense of medical impossibility to a charge of rape. The district court found that there was no reasonable possibility that the testimony of two medical experts presented post-trial by Stockman would have affected the outcome of his trial. Concluding that Stockman had failed to establish prejudice under the second prong of the analytical framework set out in *Strickland v. Washington*, 466 U.S. 668 (1984), the district court denied relief. We agree and, therefore, affirm the district court's judgment.

---

[*]The Honorable Peter C. Economus, United States District Judge for the Northern District of Ohio, sitting by designation.

FACTUAL AND PROCEDURAL HISTORY

A jury convicted Stockman of two counts of criminal sexual conduct with a person under the age of 13 (CSC I) and one count of accosting a child for immoral purposes, after he performed cunnilingus on JB, a six-year-old girl, and inserted a turkey baster into her vagina. *See* Mich. Comp. Laws §§ 750.520b(1)(a), 750.145a; *People v. Stockman*, No. 251711, 2005 WL 658041, at *1, *3 (Mich. Ct. App. Mar. 22, 2005). The trial court imposed an aggregate prison sentence of 18-50 years. *Id.* at *1.

At trial, JB testified that Stockman put a turkey baster "into where pee comes out" and that it hurt and "felt like it was in [her] stomach." *People v. Stockman*, No. 278901, 2008 WL 5273507, at *1 (Mich. Ct. App. Dec. 18, 2008). Approximately a month after the incident, Dr. Hon Lee examined JB. *Id.* He testified that JB's examination was normal and that there was no evidence of trauma to JB's genital area. *Id.* He also testified that an object inserted into the genital area might not cause any injury and thus sexual abuse could not be ruled out. *Id.*

The Michigan Court of Appeals affirmed Stockman's convictions and sentence, *Stockman*, 2005 WL 658041, at *6, and the Michigan Supreme Court denied leave to appeal. *People v. Stockman*, 705 N.W.2d 131 (Mich. 2005). Stockman filed a motion for relief from judgment, arguing, among other things, that JB's claim that she was penetrated with a turkey baster was medically impossible; he included supporting affidavits from Dr. Lee and Dr. Mark Richter. *Stockman*, 2008 WL 5273507, at *1-2. In his affidavit, Dr. Richter stated that if the baster had been deeply inserted into JB's vagina, to the point of causing extreme abdominal pain, "there would [have] be[en] obvious signs of trauma to the vaginal area, even after several weeks, and such trauma would include 'likely rupture' of the hymen, stretching or tearing of the vaginal walls, and damage to the abdominal organs." *Id.* at *2. Dr. Richter concluded that "presuming

the medical report and testimony are accurate, the version provided by the child is medically impossible." *Id*.

In his post-trial affidavit, Dr. Lee stated that when he testified at trial, he did not know that the item inserted was a baster or how it was inserted. *Id*. at *3. After observing an identical baster, reviewing JB's testimony, and reviewing his medical report, he concluded that the insertion of "an instrument of the size and composition of a plastic 'turkey baster'" as "described by the victim would have caused severe damage . . . of the vagina . . . [which] would cause permanent scarring of tissues easily recognizable by the trained eyes" and, thus, that JB's testimony was medically impossible. *Id*.

The state trial court denied Stockman's motion for relief from judgment, and the Michigan Court of Appeals denied leave to appeal. *Id*. at *1. Stockman sought leave to appeal to the Michigan Supreme Court, and, in lieu of granting leave, it remanded his case to the Court of Appeals for consideration of Stockman's innocence claims and to determine whether to grant an evidentiary hearing. *See People v. Stockman*, 732 N.W.2d 903, 903–04 (Mich. 2007). The Court of Appeals determined that an evidentiary hearing was not warranted and affirmed Stockman's convictions. *Stockman*, 2008 WL 5273507, at *2–4. Stockman again sought leave to appeal to the Michigan Supreme Court, and, in lieu of granting leave, it remanded Stockman's case to the trial court for an evidentiary hearing to determine whether his trial counsel was ineffective for failing to investigate and present testimony that JB's allegations were medically impossible. *People v. Stockman*, 774 N.W.2d 920, 920 (Mich. 2009).

At the evidentiary hearing, Dr. Richter testified that before submitting his affidavit he spoke with Stockman's former appellate attorney, that his affidavit was based largely on those discussions, and that he relied on the attorney's representations when executing his affidavit. Dr.

Richter admitted that before signing his affidavit, he did not meet with JB, review her trial testimony, or review her interviews with a social worker or the police. However, he did say that he had read Dr. Lee's evaluation, which included a history provided by a social worker but did not include a statement from JB. Dr. Richter testified that his affidavit was based on a "worst case scenario" of a "deep forceful non-lubricated penetration" into a six-year-old, but that "a very small penetration may not leave any kind of scar[r]ing." He said that he had not read anything that made him draw the conclusion that the baster had been inserted deeply into JB's vagina, but he pointed to JB's testimony that the insertion made her stomach hurt and said that he "believe[d] that there would still be some injury." Dr. Richter also testified that if the baster had been inserted no more than a quarter-inch or half-inch, he would not expect to see any injury in an examination performed a month afterwards and that even if the baster was inserted only a quarter-inch, JB might have felt pain in her abdomen because of the number of nerve endings in the anal and genital areas.

Dr. Lee testified that it was not until after Stockman's trial that he learned that the item used in the incident was a turkey baster. He testified that his conclusions in his affidavit were based on a worst-case scenario and were accurate only if one knew what and how an item was inserted. Dr. Lee said that if the baster was inserted a quarter-inch, it would not leave an injury, that pain descriptions are subjective, and that he could not tell the force, depth, or rate of insertion based on JB's testimony. Thus, after reviewing JB's trial testimony, he concluded that he could not stand behind his affidavit.

Dr. Dena Nazer testified that only about five percent of child sexual-abuse cases are supported by medical proof and that it is most likely that a medical exam occurring 33 days after a child has been penetrated by a turkey baster would be normal. She also testified that children's

genital areas heal "incredibly quickly." In addition, there was testimony that Stockman spit on the baster before inserting it, which would have acted as a lubricant making it less likely to cause injury. Dr. Nazer also testified that a child might complain of abdominal pain during sexual abuse even if nothing was inserted into the abdominal cavity because the child is trying to explain something that is beyond his or her comprehension.

Stockman's trial attorney testified at the evidentiary hearing that he participated in JB's pretrial voir-dire examination, that JB gave no indication that she experienced abdominal pain during the incident, that the defense strategy was to show that the incident never happened and that he thought that he had a strong case because Mark Stabler was "basically" an alibi witness who would testify that even though he was not present when the acts purportedly occurred, Stabler was with Stockman that day and that the acts that JB alleged did not happen.

The trial court denied relief, concluding that Stockman's trial attorney was not ineffective because he could not have known that JB experienced abdominal pain before she testified at trial and, thus, was not on notice to investigate the medical plausibility of her claim. The court also concluded that Stockman had not established prejudice because he had not shown that the outcome of the trial likely would have been different had a medical-impossibility defense been presented: Drs. Lee and Richter had based their affidavits on worst-case scenarios; the trial witnesses were believable; and there was evidence that cunnilingus was performed. The Michigan Supreme Court reconsidered and denied Stockman's application to appeal the December 2008 judgment of the Court of Appeals. *People v. Stockman*, 784 N.W.2d 210, 211 (Mich. 2010).

Stockman next filed a petition for a writ of habeas corpus in federal court, asserting nine grounds for relief. The district court denied the petition and denied a certificate of appealability

(COA). Stockman appealed, and we initially denied Stockman a COA, but on rehearing *en banc*, we granted a COA on Stockman's claim that his attorney was ineffective for failing to investigate and present evidence that JB's allegations were medically impossible.

## DISCUSSION

When reviewing the denial of a habeas petition, we review the district court's legal conclusions *de novo* and its factual findings for clear error. *Smith v. Hofbauer*, 312 F.3d 809, 813 (6th Cir. 2002). When a claim has been adjudicated on the merits in state-court proceedings, we apply a highly deferential standard of review. *Miller v. Stovall*, 742 F.3d 642, 645 (6th Cir. 2014). Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a federal court may not grant habeas relief unless the state court's adjudication resulted in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). "AEDPA requires a state prisoner to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error beyond any possibility for fairminded disagreement." *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013) (internal alteration, citation, and quotation marks omitted). Moreover, state court factual determinations are entitled to a presumption of correctness that may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

An attorney is ineffective if his performance falls below an objective standard of reasonableness and his client is prejudiced as a result. *See Strickland*, 466 U.S. at 687–88, 691–92. In reviewing a habeas claim, the district court must apply a doubly deferential standard of review: "[T]he question [under § 2254(d)] is not whether counsel's actions were reasonable.

The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). Decisions must be evaluated from counsel's perspective at the time they were made. *Id*. at 107. Under *Strickland*, an attorney is permitted to make reasonable strategic decisions that certain investigations are unnecessary. *Id*. at 106 (citing *Strickland*, 466 U.S. at 691).

Stockman has not established that there is a reasonable argument that counsel was ineffective as measured by *Strickland*'s standard, such that fairminded jurists could disagree with the state court's rejection of his claim. In Michigan, a person is guilty of CSC I when he sexually penetrates another person who is under the age of 13, Mich. Comp. Laws § 750.520b(1)(a), and the offense includes any penetration, "however slight," by an object into the genital opening of another person's body. Mich. Comp. Laws § 750.520a(r). Stockman's trial attorney was present and participated in a voir-dire examination of JB. JB testified that Stockman put the baster in her genital area, that it hurt, and that afterwards she experienced pain in her genital area. JB's pretrial statements would not have put Stockman's trial attorney on notice that she would later testify at trial that she felt pain in her abdomen when the baster was inserted. Thus, counsel would not have been alerted to a possible defense of physiological implausibility or medical impossibility, because there was no testimony that the turkey baster was inserted deeply into JB's vagina. Because counsel's decisions must be evaluated from counsel's perspective at the time that they are made, it was not unreasonable that counsel would forgo investigation of the plausibility of JB's testimony. Thus, Stockman has not shown that his trial attorney acted unreasonably. Further, Stockman has not established that it is reasonably likely that he would not have been convicted had his attorney presented evidence that JB's claims were medically impossible. *See id.* at 111−12. Indeed, Drs. Lee and Richter testified that

their affidavits were based on a worst-case scenario and that it was possible that even a slight insertion could have caused JB to report abdominal pain without leaving an injury. The victim's description of the event was not so at odds with the medical evidence that any competent attorney would have argued impossibility. Thus, Stockman has not shown that the state court's rejection of Stockman's ineffective-assistance-of-counsel claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court. *See* 28 U.S.C. § 2254(d)(1).

To the extent that Stockman argues that JB's testimony was not credible and that his attorney was ineffective for failing to adequately investigate an alibi witness, challenge the prosecutor's leading examination, conduct proper cross-examinations, or have the baster DNA-tested, these additional challenges are not properly before us because they were not included in the COA. *See Searcy v. Carter*, 246 F.3d 515, 518 (6th Cir. 2001).

Stockman asks for the appointment of counsel on appeal, but a civil litigant has no constitutional right to the appointment of counsel, and that privilege is justified only in exceptional circumstances. *Lavado v. Keohane*, 992 F.2d 601, 605–06 (6th Cir. 1993). We conclude that Stockman has not met that standard.

## CONCLUSION

Accordingly, we AFFIRM the district court's judgment and DENY the motion for appointment of counsel.